Next case is No. 25-1034, U.S. Bank Trust, N.A. v. Jackie L. Bowden, et al. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin? Good morning, Your Honors. Renee Longoria for U.S. Bank Trust. May I reserve three minutes for my rebuttal? You may have two minutes. Thank you, Your Honor. There are four central issues that I want to focus on today. First, that Jackie Bowden is not a mortgagor, and because she's not a mortgagor, she's not entitled to the protections of 6111. Two, that this is a mature loan, and because that loan is mature, again, 6111 doesn't apply. Three, that because of that 2012 judgment and the 2014 judgment, Jackie's collaterally stopped from the arguments she's now making. Four, even if the notice was somehow required, that this notice was good, particularly under the more recent decisions that have come out. And five, even if the court erred, or even if this notice is incorrect, the court erred in flipping the decision or entering judgment for the Bowdens, or for Mrs. Bowden, rather than dismissing without prejudice. What's your best argument that she's not a mortgagor, and how do you view the declaratory judgment? Absolutely, Your Honor. She's not a mortgagor because she didn't sign a note or the mortgage. The declaratory judgment didn't make her a mortgagor. The declaratory judgment said, Jackie, I understand you brought this case that you are not responsible, or that there's no mortgage on the property because the legal description is wrong. It's the 2009 description that only conveyed that was the ownership of just Richard, and that you didn't sign it. However, we're saying that NationStar, who now holds this loan, they have the mortgage interest in the property. That doesn't make her sign that note and mortgage. The only time she could have become a mortgagor or a borrower is at the moment that that loan was taken in 2005. She didn't sign the note, and she didn't sign the mortgage. Now, in 2003, she did. But, counsel, I mean, the Superior Court in Maine knew all that. It still said, for the reasons it gave, that she's a mortgagor. I mean, that's what the court said. Why doesn't that resolve the issue? Your Honor, I disagree respectfully that the Superior Court said that she was a mortgagor. I do agree that the Superior Court said that she was subject to the mortgage, but I don't agree that it made her a mortgagor. There was an equitable mortgage on the property, yes, that is what they did. But they didn't make her a mortgagor, neither did they make her responsible under the note. And she and Richard continue- Well, that's a separate, that's- Yes, Your Honor, those are separate arguments. That's a separate issue. Yes, Your Honor. What's the, what definition of mortgagor do you rely upon to distinguish her from a mortgagor, given the equitable finding that she was subject to the mortgage? Thank you, Your Honor. The definition of mortgagor is someone who signs the mortgage. What's your authority for that? My authority for someone who mortgages their interest in the property- The finding by a Superior Court judge, as I understand it, that she was subject to the mortgage, her interest. Yes, that's correct. That sounds to me like it's saying she's equitable mortgagor. I agree, Your Honor, that that makes, that that creates an equitable mortgage. And so, when I then look at the statute, I see no adjective before the word mortgagor. It doesn't limit it to one particular type of mortgagor. In other words, no language expressly excludes an equitable mortgagor. So what authority do you rely on so that when I read the word mortgagor in section 6111, I should exclude from consideration an equitable mortgagor? I rely on the statute itself and the plain meaning of it. In other words, I don't think we have to go beyond that. What language? The language of 6111 in defining the mortgagor. Because in 6111, the statute specifically, in order to include someone who would have an ownership interest, it talks about the mortgagor and any cosigner. So in the statute, by defining the word mortgagor and cosigner, it's my argument that you had to have actually mortgaged your interest in the property- Mortgagor, could you help me and point to the definition of mortgagor that you're relying on? The mortgagor definition that I'm relying on is the root of mortgage, being the mortgage itself and the document that she elected not to sign, and the one who gives up their interest in it. So where are you getting this definition from? I'm looking specifically at the mortgage itself, which was not signed by her, and defines what a mortgagor or what someone who executes a mortgage is. Often, when we have this kind of a situation, what happens is the bank will bring an action to reform the mortgage and to make the person actually a mortgagor of the property. That didn't happen here. What happened was that she tried to escape liability, or tried to escape the mortgage by filing that 2014 action, and I'm arguing that it didn't allow her to do that. And that the definition, it didn't make her a mortgagor. Just as if she would have inherited the property, it wouldn't have made her a mortgagor. Richard transferred this property to her, but that doesn't give her the benefits of the contract, the mortgage contract that she chose not to sign in 2005. I hear you saying all that, and you may well be completely correct, but it would assist us if there were some statute or regulation or case that adopted the rather limited definition of the word mortgagor, or at least a definition that excluded someone in her position. And so far, I haven't heard any reference to any such case, rule, law, or regulation. Thank you, I do think that one of the issues with this case is there isn't a great deal of main law on point. Turning to the second point, and that being that 6111 in general does not apply in this case because this loan is mature. For that, I'm looking directly at the statute again. Also, we're looking at Tibbets versus Bese, which was a law court decision. And in the context of Tibbets, the court basically reminded the folks before the court who were contesting the foreclosure action that this was a mature loan. And because it was a mature loan, he wasn't going to look, or they weren't going to look behind that. Because there's two ways to get to the point where you can close. Looking at 611, and you talk about this in your respective briefing, that there is this or otherwise enforce the mortgage. There's no question that what's going on here is the bank's attempt to enforce the mortgage. That's exactly what's happening here. And I mean, this statute does have, seems to be in part a kind of consumer protection statute. It's trying to protect the interests of mortgagors. And why should we not read that language to embrace exactly what's happening here? Thank you, Your Honor, for two reasons. Number one, that if we finish reading the rest of the language that when they talk about otherwise enforce, the statute goes on, otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make the required payments and to reinstate the loan. So if you go all the way through the statute, you see the why. It's because at that point you would be restoring them to the mortgage. To restoring them to the rights under the mortgages if the default didn't occur. And then, and I will cover the rest in my- But the mortgage is restored in the sense that the interest of the mortgagee will be terminated if payment is forthcoming. So there are still provisions of the mortgage that remain relevant, even though we're at the end of the life of the mortgage, if you will. So the mortgage doesn't just disappear. I agree, Your Honor, and I think that the recent case law or the recent efforts to change the statute are really illustrative of the fact that as it stands now, it is limited and it doesn't include a mature loan. But they tried, and in June, their efforts were struck down to try to expand this statute from a consumer protection perspective to include a mature loan. And the legislature specifically said no. So for that reason, I would argue it's not. So you're saying once the loan matures, there's no right to cure? That's absolutely correct, Your Honor. And therefore, a notice of a right to cure makes no sense? It's not an element. Under Everett and the various cases I cite, that's absolutely true. And because your right of redemption has expired. The right of redemption, that was that 90 days, that belonged to Richard. And at the end of that 2012 judgment that was valid, that expired. So there is no more right of redemption. Would this be a judicial or private foreclosure? Pardon, Your Honor? Would this be a judicial or private foreclosure? Would this be an issue of- A judicial foreclosure? This is a judicial foreclosure in Maine, yes. So you would have to give notice of the foreclosure proceeding? We did give notice of the foreclosure proceedings, yes. So someone who's sitting there in a property, and there's a mortgage on the property, but the mortgage is matured fully, has no right to cure. Correct. So you're saying we should look at the notice of mortgager's right to cure and construe that as not applicable because there is no right to cure? That's correct. They would instead get notice of the foreclosure proceeding? That's correct. So they would get a summons, and then they would get a detailed foreclosure complaint. But the notice that their loan is maturing, it was Richard's loan that matured, that's right in the contract, right there, that they signed in 2000, or he signed in 2005. So that's really the best notice of the fact that that loan had matured, is the contract itself. Thank you. John Steed for the appellee, Jackie Bowden. I think just following up on what you were saying, Your Honor. Section 611H, it's sort of on this topic of whether paying the default notice on the foreclosure, notice on a mature loan is a cure or it just ends the obligation to the mortgage. Section 611H talks about, and the notices all say that the notice have to inform the borrower or the mortgage or that amounts that come due in the time between the notice is sent and when the notice is paid, that 35 day cure period, other amounts can become due in that time. So I think this idea that paying the cure amount would end the mortgage obligation is erroneous. I don't think the argument is that paying the amount ends the cure obligation. I think the question is if the loan is matured, then does there exist any right to cure? Yes, Your Honor, I think there is a right to cure because separately in the mortgage obligation, there's the right to have the mortgage discharge and that's a contractual right that they'd only have upon full payment. And there's no guarantee that paying the cure amount that they're claiming would pay off the whole mortgage. Because the notice itself says, and the statute says under 6111AH, says that other amounts that become due are still owed to us. I also think in Thomas, on this topic of what needs to be in a default notice under 611A1B. Thomas discusses that there are two things that need to be there. One, the amount you need to cure the loan. And two, the total amounts that are due on the loan, that those can be different. And I think in the bank's arguments, that's how they say that these memorandum decisions and severance say that if you overstate the cure amount, it's defective. And if you understate the cure amount, it's not. And so I think both of those, all of those together leave out this sort of pay the money in the cure notice and still owe money. So that's just- But I'm interested in the reverse. In other words, if the mortgage is fully matured, matured last month, what authority is there in the statute law regulation that says the mortgagor has a right to cure? Because the, well, I think calling it a right to cure is just says that that's what they describe it as. But what they have to do is describe in detail what's owed and why, and state it precisely. And that is, as a- But does, a right to cure is a right that doesn't depend upon the mortgagee allowing me to do something. It's a statutory right as mortgagor I have. Yes, Your Honor. And hence, there's a statute that says before they take it from foreclosure, they've got to notify me of my right to cure. That way I can be ready and cure. But if the mortgage is fully matured, is there a right to cure? Yes. And what says so? In what sense so? Because that's an intermediate step before filing a foreclosure and including legal expenses. I didn't say why. I said what says so. Can you cite us to some authority that says there is a right to cure? I'm not a real estate lawyer, so I don't know this off the top of my head. What is, what says that you can cure a matured loan? Section 611 says before you file, before you enforce a mortgage, you have to give the mortgagor information about their loan and ways to prevent foreclosure. And it has to be correct. So you're saying it does, notwithstanding its title, it's giving notice other than the right to cure. I think, I don't, I'm having trouble with understanding, paying, curing, they're saying you owe us money, and if you don't pay the money, we're going to foreclose on you. And that's what the right to cure is. I mean, the default is you didn't pay us, and you need to. If there's no right to cure, they don't have to offer you any ability to pay anything. They could just foreclose, and you need to show up at the foreclosure proceeding and see what you can do there if you have no right to cure. I think the meaning of cure in the statute is to pay what's owed. And they're saying you didn't pay us, so we're going to foreclose on you. It doesn't define cure, and I think, again, we're dealing with a homeowner or consumer protection statute to read, this is a very narrow reading of cure they're asking us to go down. When it's a statute that protects homeowners, so they don't lose their homes. And so, Counselor, just I'd like you to reassure me on one thing. I get the feeling that if we were to rule in your favor, that the consequence might be that your client would be, in some of the cases, use this language, be getting the home for free, for nothing. That's a pretty unattractive concept. Would that be the consequence of a ruling in your favor in this case? It could be, Your Honor, and I think in answer to that, the law imposes harsh consequences to parties who sit on their rights. And here, I mean, at least seven years passed since the declaratory judgment in 2014, and no one filed a foreclosure. So, if this results in the total loan balance being extinguished, it's because no one brought this until the loan was matured. And so, because, I mean, your argument of the failure to comply with the notice, the requirements of the notice statute goes to computational errors. If you will, that the bank made. Why? They could say, okay, well, we didn't get it quite right. Why can't we do it again? Why can't we initiate another foreclosure action in which we get it right? We give notice. We correct the errors. Why? Why shouldn't the bank be able to do that? I mean, there is law suggesting that they can do that. Now, there may be some claims that they cannot renew in that second action, but to completely give up the right to foreclose, that's a pretty harsh outcome. Oh, and that is not the outcome, I think, that a judgment in favor or anything that the law court has said would result in. I think Finch talks about the preclusive effect of a prior foreclosure judgment. Right. Moulton upholds a prior foreclosure judgment. And they all say the limit is the mortgagee is precluded from future claims on the note as of the court's judgment or some variation of that. And that's as I think there's a letter came in from U.S. Bank with a case upholding dismissal without prejudice, but still the court making very clear that this is the prejudicial effect that these, you know, a defective 6111 notice will have going forward. And that's different than what it was pre-Finch. But there's no categorical rule that the preclusive effect of the judgment is a free house. It could be the instance in this case because the loan is mature, you know, it can't be accelerated. I think that's what Tibbet says is it's irrelevant when the loan is mature whether acceleration can happen. But the fact that the loan is mature is, you know, the U.S. Bank's failure to mitigate that harm. They could have filed a foreclosure in 2012. They could have kept Jackie Bowden in the foreclosure in 2012. They could have filed one in 2013, 14, any time up until now. They waited until after the loan was mature. And I don't know why and they haven't said why. But that, I don't think that they raised the stakes should factor too heavily into the consequential outcome, you know, what the, you know, thinking well what is the consequence of this judgment? The consequence of, well, you know, what's the consequence of not bringing a claim you could have brought for the last seven years? When you say they raised the stakes, you're saying they allowed her to remain in the property without foreclosure for years and without her making any payments? That's, I mean, there could be other. Lots of people would like to have those stakes raised. What's your strongest argument that the notice, the 611 notice is deficient? The prior, I mean, the prior judgment adjudicated certain facts about this mortgage and this loan. And the prior judgment, if you carry the determinations in the prior judgment in 2012 forward to now, the amount that they're stating is due an interest is off by, they're asking for $6,000 more in interest than would be owed under the prior judgment. They're also asking for an inflated principal amount. And I think overall, why does this law matter? Well, if this is, this is a law that, you know, this is a mortgage that apparently fell through the cracks. And so seven years later, the bank is asked to do a pretty simple thing. Tell us, you know, what do they owe? And for what? And why? Are you also arguing that the use of the word payments rather than principal is an error? Yes. Are there, there's at least one case that says that won't satisfy the, even the technical notice requirements of 6111? I didn't follow the question. I'm sorry. Does, there's a main law court case that I read, Vino, which talks a bit about the notice requirements and the sufficiency and sort of says this issue of payments and principal isn't an important one. I believe Vino, Your Honor, talks, discusses as to whether a notice of default and right to procure is admissible evidence, whether discrepancies within it make it inadmissible. And then the court, and that's a district court, a district of Maine case, says that even, you know, assuming that that was an issue, I wouldn't find it a problem. But that, the issue there is understating the amount due in late fees. There could have been, there were more late fees in the record than was asked for the default notice. And so is that fatal? And there, but even the recent severance, I think other recent law court cases say, well, if the default notice overstates the amount due, then definitely there's a problem. And if it understates, there isn't. And here, I don't think there's been any serious engagement with the question that the numbers in the 2012 default judgment are binding. Now, that's not, the substance of that argument isn't addressed in any of the briefing by U.S. Bank. I think even if the other waiver issues aren't there, like what, you know, as to, sorry. It's still, those numbers are binding and they're asking for thousands of more dollars than they're owed, and that's serious. Thank you. Renee Longoria for U.S. Bank Trust. I'd like to begin with your question, Your Honor, about severance. Yes, you're absolutely right. And the law is more solidified following the trial court's decision. But this, and there is argument in the reply brief that goes through the math. The $205 that gets moved up to non-interest bearing principle, they're not asking for thousands of more dollars, and they do, in fact, follow the terms of the note when it comes to calculating that interest. But the most important argument, I wanted to go back because the Finch or the Finch and Moulton decisions really hit on this harshness of this remedy. And throughout the briefing, and this is the whole reason why we didn't just send another notice, even though we don't think she's entitled to it and we think it's mature, et cetera, because this loan is mature. And because it's mature, it has consequences that go with it. You can't carve out everything that is calling a loan to be in default if it's mature. There won't be anything left, that's what he will argue. And so that means that these folks who, in 2005, choose to only have the husband sign the note and the mortgage, and then sign the legal description on there that says what is being mortgaged, the one acre that he already gave away, and he then deeds the property to the wife in 2010 on his way into bankruptcy, and he does that accurately, and then we come here and we argue that she should be entitled to a notice of right to cure. If that 2012 judgment is accurate, and they're going to stand behind it, and this is during the context of this case is the first time that we've had them argue that the 2012 judgment is accurate, but if it is, that right of redemption was 90 days. And yes, Your Honor. Excuse me, but I'm just trying to, I mean, you would really, your client would really be in a tough position if they tried to initiate a new foreclosure action. It's not like a situation where there have been a few failures to pay. You initiate a foreclosure action attempting to accelerate payment. Your notice is defective, and so you're going to have to file a new foreclosure. Now, you couldn't try to collect what you were trying to collect at the time you filed that foreclosure, but if there have been new defaults, you can go after those. You wouldn't be precluded from doing that. But here, where the loan has matured, your judicial foreclosure action would be trying to get the very relief that you were not able to get because of the notice. So he would have a, I guess that's what you're worried about. He would have a very strong preclusion argument in that situation. I mean, I gather that's what you're concerned about. And it gets stronger because Richard has his discharge, and Jackie never signed a note. Right. So yes, that is what I'm concerned about. But why can't, but then, I guess he could say, I guess we're getting to the next case, but I'll ask it anyway. But he could say, well, look, you waited way too long. And so why should we have any sympathy for you? I didn't give Greenleaf birth, but the reason why this case took a bit of time is because right in the middle, you have the Greenleaf decision. So then we have to go back out and solve the Greenleaf issue, which we did in 2019. But this, like many other cases, it took time to get the quick claim assignment that we needed in the chain of assignments in order to file this action. And so it wasn't that we were sitting around waiting, it is very much that. And there's also, as you read through these briefs, one of the things that becomes clear is because of the complexity of this case, even among counsel, at one point there's argument that there's a half interest that somebody's trying to get rid of. No, Richard deeds his property right to her on his way into bankruptcy, knowing that she didn't sign the note and she didn't sign the mortgage, and that was a big deal during his deposition. He doesn't think we can do anything, because the 2014 judgment only gave us, I think he says 5% or $2. I don't know what kind of an interest you have. So we are in a difficult position, and that's why we elected to appeal. This is a, it's like the obsolete mortgage statute. You know, that's a very severe situation. If you've got an absolute, obsolete mortgage, there are statute implementations in Maine and Massachusetts, throughout the country, that say you can't enforce that obsolete mortgage. There's significance to the fact that this loan is mature, and that's what we're resting on. Should we certify some of this to the law court? I thought of that, your honor, initially. And the strength of the fact that she wasn't a mortgagor, in my mind, was the reason why I didn't certify it, and the other reason I didn't certify it, is because, or didn't request to certify it, is because I thought it was very clear, after seeing Tibbetts, that it was not an issue, because this loan was in fact a mature loan. It should be treated differently. And then when the statute came down, and they tried to amend it, and they failed, I thought that was also clear. But the questions that your honors have raised today, perhaps that is wise. Thank you, your honor. Thank you. Thank you, counsel. That concludes argument in this case.